THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, a foreign insurance company,<br><br>                 Plaintiff,<br>   v.<br><br>DIAMOND PLASTICS CORPORATION, a Nevada corporation, and H.D. FOWLER COMPANY, a corporation,<br><br>                 Defendants. | CASE NO. C19-1983-JCC<br><br>ORDER |

       This matter comes before the Court on Plaintiff's motion to strike (Dkt. No. 27). Having considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

## I.    BACKGROUND

       On March 24, 2017, Kiewit Infrastructure West Co. contracted with H.D. Fowler[1] to supply sewer and water pipe for a utility conveyance system linking the Kent/Auburn corridor. (Dkt. No. 1 at 3.) Fowler purchased the pipe from Defendant and had the pipe delivered to the project cite. (*Id.*) The installation of the pipe did not go smoothly, and Kiewit eventually charged

---

[1] Although Fowler appears in the caption of this case, the Court dismissed Fowler as a defendant on June 1, 2020. (Dkt. No. 45.)

ORDER
C19-1983-JCC
PAGE - 1

Fowler $1.5 million for delays and other costs. (*Id.*)

On March 27, 2019, Fowler sued Defendant in King County Superior Court, seeking to recoup the $1.5 million that it had paid to Kiewit. (*Id.*) On March 29, 2019, Defendant notified Plaintiff, Defendant's insurer, of Fowler's lawsuit. (Dkt. No. 25 at 2.) That same day, Plaintiff's parent company, Travelers Indemnity Company,[2] opened a "coverage" claim file and assigned Mark Croom, one of Travelers's adjusters, to investigate whether Fowler's claims against Defendant were covered by Defendant's insurance policy with Plaintiff. (*See* Dkt. Nos. 27-3 at 3, 33-1 at 5.) As part of that investigation, Croom consulted with Laura Hogan, an attorney in Travelers's Claims Legal Group. (Dkt. No. 27-3 at 3.) "[Croom's] consultation with Ms. Hogan was limited to providing [Plaintiff] with counsel as to its own potential liability [for Fowler's claims], including whether or not coverage exists under the law." (*Id.*) Following the consultation, Croom summarized in his claim file Hogan's opinion regarding whether Fowler's complaint triggered Plaintiff's duty to defend.[3] (*See id.*; Dkt. No. 33-1 at 2.) Croom marked the opinion as "SENSITIVE" and "Attorney Client Privilege." (Dkt. Nos. 27-3 at 3, 33-1 at 2.)

While Croom's investigation was ongoing, Travelers opened a "defense" claim file and assigned Brian Skinner, another adjuster at Travelers, to help with Plaintiff's possible defense of Defendant. (*See* Dkt. Nos. 27-2 at 3, 33-2 at 5–6.) Although Skinner's claim file was supposed to be separate from Croom's claim file, Croom's unredacted notes, including his notes from his consultation with Hogan, were inadvertently uploaded to Skinner's claim file in April of 2019. (*See* Dkt. No. 27-2.)

On June 3, 2019, Croom sent Defendant a letter informing Defendant that Plaintiff would

---

[2] The parties often refer to Travelers and Plaintiff interchangeably. (*See, e.g.*, Dkt. No. 32 at 1) (defining Plaintiff as "Travelers"). The two entities are legally distinct, however, and the Court encourages the parties to refer to them as such.

[3] Defendant attempts to characterize the entry as Croom's "conclusion that a duty to defend was owed." (Dkt. No. 32 at 7.) Defendant's characterization is untenable: the wording of the entry shows that Croom was summarizing Hogan's opinion, not detailing his own conclusion. (*See* Dkt. Nos. 27 at 2, 27-3 at 3.)

defend Defendant against Fowler's lawsuit under a reservation of rights. (Dkt. No. 33-3 at 2.) The letter also told Defendant that Plaintiff was appointing Floyd, Pflueger & Ringer as Defendant's counsel. (*Id.* at 10.) Shortly thereafter, Skinner sent Floyd, Pflueger & Ringer his defense claim file. (Dkt. No. 27-2 at 3.) Before sending the file, Skinner did not redact or remove the portions of the file relating to Croom's consultation with Hogan. (*Id.*)

On December 4, 2019, Plaintiff filed the present action to determine if it has a duty to (1) continue defending Defendant and (2) indemnify Defendant from any liability arising out of Fowler's lawsuit. (Dkt. No. 1 at 17–21.) In response, Defendant filed counterclaims alleging that Plaintiff breached its duty of good faith and violated Washington's Consumer Protection Act, Wash. Rev. Code ch. 19.86, by, among other things, waiting an unreasonable time to notify Defendant that Plaintiff would provide a defense. (*See* Dkt. No. 20 at 11–13.) As evidence of Plaintiff's unreasonable delay, Defendant quoted the entry in Croom's claim file that summarized his consultation with Hogan. (*Id.* at 8.) Plaintiff now moves to strike the quoted entry from Defendant's counterclaim. (Dkt. No. 27.)

## II.     DISCUSSION

### A.     Federal Rule of Civil Procedure 12(f) and Privileged Material

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.' 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations omitted).

"Courts utilize Rule 12(f) to strike sections of a pleading that include inadmissible or privileged information." *Fodor v. Blakey*, 2012 WL 1289386, slip op. at 14 (C.D. Cal. 2012); *see, e.g.*, *Hensley v. City of Port Hueneme*, 2018 WL 5903963, slip op. at 9 (C.D. Cal. 2018); *Sims v. Roux Laboratories, Inc.*, 2007 WL 2571941, slip op. at 1 (E.D. La. 2007); *Stewart v.*

*Wachowski*, 2004 WL 5618386, slip op. at 2 (C.D. Cal. 2004); *Alldread v. City of Grenada*, 1991 WL 501642, slip op. at 7 (N.D. Miss. 1991). Courts strike privileged material because it is inadmissible and thus can have "no possible bearing upon the subject matter of the litigation." *Fodor*, 2012 WL 1289386, slip op. at 23 (quoting *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553–54 (D. Haw. 1998)). In other words, privileged material falls squarely within the ambit of Rule 12(f). *See Fantasy, Inc.*, 984 F.2d at 1527.

  **B.**   **Plaintiff's Motion to Strike**

  Plaintiff's motion to strike turns on two issues: (1) whether Croom's notes about his conversation with Hogan are privileged and (2) whether that privilege was waived when Skinner disclosed those notes to Floyd, Pflueger & Ringer. The Court concludes that although those notes are privileged, the privilege was waived.

    1.   <u>Privilege</u>

  Defendant's counterclaims are based on Washington law. (*See* Dkt. No. 20 at 11–13.) Accordingly, Washington law governs Plaintiff's claim of attorney-client privilege. Fed. R. Evid. 501. Under Washington law, it is presumed that when an insured brings a bad faith claim against its insurer, the attorney-client privilege does not protect from disclosure the communications between the insurer's attorney and the insurer's adjuster.[4] *See Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 246 (Wash. 2013). To overcome the presumption, the insurer must show that its attorney was counseling the adjuster as to the insurer's own potential for liability rather than investigating, evaluating, or processing the insured's claim. *Id.* Upon such a showing, the insurer is ordinarily[5] entitled to the redaction of notes that reflect the attorney's mental

---

[4] Although the Washington Supreme Court articulated the presumption of discoverability in a first-party property damage case, the Court has previously explained that the presumption logically applies to third-party liability cases as well. *See Trotsky v. Travelers Indem. Co.*, Case No. C11-2144-JCC, Dkt. No. 144 at 12 (W.D. Wash. 2013).

[5] Even if an attorney was counseling the insurer as to its potential for liability, the attorney's mental impressions are still discoverable if the insured shows "that a reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred." *Cedell*,

impressions. *Id.*

Here, Plaintiff has offered sufficient evidence to establish that Hogan was counseling Croom as to Plaintiff's potential for liability. In a sworn declaration, Croom explains that attorneys in Travelers' Claims Legal Group "do not adjust claims or take part in the quasi-[fiduciary] ta[s]ks of investigation, evaluating or processing existing claims. Rather, the attorneys . . . provide Travelers and its subsidiaries with counsel as to their own potential liability." (Dkt. No. 27-5 at 2.) Croom further explains that he sought Hogan's counsel for the latter purpose—that is, to understand "whether or not coverage exist[ed] under the law." (*Id.* at 3.) Defendant does not dispute Croom's account or otherwise offer evidence showing that Hogan participated in the investigation of Defendant's claim. Accordingly, Hogan's mental impressions, which Croom summarized in his claim file, are privileged. *See Cedell*, 295 P.3d at 246.

        2.    Waiver

Having determined that Hogan's impressions are privileged, the Court must decide whether the privilege was waived when Skinner sent Croom's unredacted notes to Floyd, Pflueger & Ringer. Both parties appear to assume that if Skinner and Croom lacked authority to intentionally waive Plaintiff's attorney-client privilege, then the privilege could not have been waived by Skinner's inadvertent but voluntary disclosure of Croom's unreacted notes. (*See* Dkt. No. 32 at 7–12) (arguing the privilege was waived because (1) Skinner and Croom were empowered to waive it and (2) Plaintiff and Travelers did not take precautions to prevent inadvertent disclosure); (Dkt. No. 39 at 10–15) (arguing that an adjuster cannot inadvertently

---

295 P.3d 246. Defendant does not argue that civil fraud occurred. (*See generally* Dkt. No. 32.) Instead, Defendant argues that the communication is "highly relevant to the bad faith claim that Travelers waited two months before it advised [Defendant] that it would defend under a reservation of rights and eight months before it filed this coverage action in which it claims it has no duty to defend." (*Id.* at 11–12.) Defendant may be correct, but plausible claims of bad faith do not, standing alone, justify piercing the attorney-client privilege in Washington; there must be evidence of fraud. *See Leahy v. State Farm Mut. Auto. Ins. Co.*, 418 P.3d 175, 182 (Wash. 2018). Defendant has not offered any such evidence.

ORDER
C19-1983-JCC
PAGE - 5

waive an insurer's attorney-client privilege because adjusters are not empowered to waive the insurer's privilege). This assumption is mistaken.

The parties' mistaken assumption stems from a misreading of *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985). At issue in *Weintraub* was whether a trustee of a corporation in bankruptcy had the power to intentionally waive the debtor corporation's attorney-client privilege. *See id.* at 345–46, 358. In deciding that the trustee could waive the debtor-corporation's privilege, the Supreme Court analogized corporations in bankruptcy to those outside of bankruptcy. *See id.* at 351–53. "Because the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management," the Supreme Court reasoned, "the actor whose duties most closely resemble those of management should control the privilege in bankruptcy." *Id.* Plaintiff seizes on this language, arguing that "the Supreme Court clearly stated that a corporation's management ***and only a corporation's management*** has the ability to waive a corporation's attorney-client privilege." (Dkt. No. 39 at 10) (emphasis in original).

Although Plaintiff correctly summarizes what the Supreme Court said in *Weintraub*, Plaintiff ignores that the Supreme Court was speaking about the power of corporate management to intentionally waive a corporation's attorney-client privilege. *See Weintraub*, 471 U.S. at 351–53. The Supreme Court said nothing about what happens if lower-level employees inadvertently yet voluntarily disclose privileged material while acting within the scope of their authority. *See id.* When faced with such disclosures, many courts have held that the disclosure waives the corporation's attorney-client privilege if the corporation took inadequate steps to prevent the disclosure. *See, e.g.*, *Barcomb v. Sabo*, 2009 WL 5214878, slip op. at 4 (N.D.N.Y. 2009); *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 2006 WL 8436581, slip op. at 2 (W.D. Okla. 2006); *Denny v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 414 (S.D.N.Y. 2004); *Jonathan Corp. v. Prime Comput., Inc.*, 114 F.R.D. 693, 698–700 (E.D. Va. 1987). These courts observe that, in general, "[t]he voluntary disclosure of privileged communications to third parties . . . by the

client *or the client's authorized agent* destroys both the communications confidentiality and the privilege that is premised upon it." *Denny*, 362 F. Supp. 2d at 414 (emphasis in original) (quoting Paul R. Rice, Attorney–Client Privilege in the United States § 9:27 (2d ed.1999)). Exempting corporations from this general rule would be unfair, these courts reason, because corporations would have no responsibility to monitor how their low-level employees handle privileged communications even though those employees are covered by modern expansions of the attorney-client privilege. *See Jonathan Corp.*, 114 F.R.D. at 698–99.

The Court finds this reasoning persuasive. Accordingly, the Court must decide if Plaintiff took adequate steps to prevent Skinner and Croom from disclosing Croom's confidential communications with Hogan. Plaintiff bears the burden of proving that it took such steps. *See Sitterson v. Evergreen Sch. Dist. No. 114*, 196 P.3d 735, 740, 742 (Wash. Ct. App. 2008). Yet, Plaintiff has offered no evidence that it instituted procedural safeguards—such as reviewing claims files for privileged information before sending them to a third-party—to prevent a disclosure of the type at issue here. Consequently, the Court finds that Plaintiff's privilege was waived when Skinner voluntarily sent Croom's summary of Hogan's mental impressions to Floyd, Pflueger & Ringer.

**III.   CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion to strike (Dkt. No. 27).

DATED this 24th day of July 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE